UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL WALI KHAN,<br><br>   Plaintiff,<br><br>   v.<br><br>DONALD BLOME and ANTONY BLINKEN,<br><br>   Defendants. | Civil Action No. 22-2422 (JEB) |

### MEMORANDUM OPINION

Plaintiff Abdul Wali Khan is a Pakistani citizen who awaits a decision on his application for a J-1 visa, which he requires to enter the United States and enroll in a medical residency program. He contends that the seven months that he has waited for his visa to be issued or finally refused constitute an unlawful delay and asks the Court to order the Government Defendants to act. Defendants now move to dismiss. Because the Court finds that a decision on Khan's visa application has not been unreasonably delayed, it will grant the Motion.

I.   **Background**

The Court begins with an overview of the process for obtaining a J-1 visa and then turns to the background of Plaintiff's claims and the procedural history of the case.

The J-1 visa is a nonimmigrant "exchange visitor" visa that allows a foreign citizen to travel to the United States in order to teach or study. See U.S. Dep't of Homeland Sec., Exchange Visitors (Apr. 22, 2020), https://bit.ly/3d1Nq32 [https://perma.cc/CPY6-QT4U] (USCIS J-1 Visa Information); 8 U.S.C. § 1101(a)(15)(J). As the J-1 visa is a nonimmigrant visa, J-1 visitors must return to their country upon completion of their program. Id.

The Department of State administers the J-1 exchange-visitor program by designating various public and private organizations as sponsoring entities.  See USCIS J-1 Visa Information.  To obtain a J-1 visa, an applicant must first "apply for and be accepted into an exchange visitor program through a designated sponsoring organization in the United States." U.S. Dep't of State, Exchange Visitor Visa (last visited Sept. 12, 2022), https://bit.ly/2wnrSFl [https://perma.cc/M9WA-JQ3F].  Upon acceptance to an approved program, she must then complete Form DS-160 (the Online Nonimmigrant Visa Application), submit biometric data, and attend an interview with a Department of State consular officer to determine eligibility for the visa.  Id.; see 8 U.S.C. § 1201(a)(1)(B); 22 C.F.R. §§ 41.102, 41.103.

Once an applicant has properly completed each of these components, a consular officer "must issue the visa, refuse the visa, or," in circumstances inapplicable here, "discontinue granting the visa."  22 C.F.R. § 41.121(a).  The officer need only make an initial, rather than final, determination about an applicant's visa eligibility.  In other words, under § 221(g) of the Immigration and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility.  See 8 U.S.C. § 1201(g); U.S. Dep't of State, Administrative Processing Information (last visited Sept. 12, 2022), https://bit.ly/2GO3jEg [https://perma.cc/NK8K-9U8H].  The Department of State publishes visa-application statuses online, but, beginning in March 2020, changed its website to display the status of applications undergoing further administrative processing as "refused."  U.S. Dep't of State, Visas: CEAC Case Status Change (March 5, 2020), https://bit.ly/3DkqCWP [https://perma.cc/K8XQ-F6UY] (Status Change Memo).  This reporting change in such circumstances reflects "no change in such applicants' actual cases."  Id.

Plaintiff is a medical doctor who requires a J-1 visa to enroll in an American medical residency program; he interviewed for the visa at the U.S. Embassy in Pakistan and thus completed his application in April of this year. See ECF No. 1 (Compl.), ¶ 1. Since then, his application has remained in administrative processing. Id. Believing that Defendants have unreasonably delayed the processing of his visa, Khan brings this action against Secretary of State Antony Blinken and Ambassador for Pakistan Donald Blome, in their official capacities, under both the Administrative Procedure Act and the Mandamus Act in order to expedite a result. Id., ¶¶ 9–30. He emphasizes that he will suffer severe professional and financial harm if a decision is further delayed. Id., ¶ 1. The Government now moves to dismiss. See ECF No. 5 (MTD).

## II.     Legal Standard

Defendants' Motion to Dismiss invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552

(2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.

**III.    Analysis**

As a threshold matter, the Court first notes that the underlying facts here are nearly identical to those in Sawahreh v. United States Dep't of State, No. 22-1456, 2022 WL 4365746 (D.D.C. Sept. 21, 2022), in which this Court recently dismissed a J-1 visa applicant's undue-delay claim under the APA.  It is puzzling that neither party cited this directly apposite case.  In any event, Khan brings this action under both the APA and the Mandamus Act, but "[t]he standard for undue delay under the Mandamus Act [in this context] . . . is identical to the APA standard."  Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020).  The additional mandamus claim therefore does not alter the Court's analysis.

As in Sawahreh, Defendants here maintain both that Plaintiff's claims are barred by the doctrine of consular non-reviewability and that they fall short on the merits.  The first of those arguments is easily dispensed with.  For the reasons articulated in that decision, the Court again notes that the consular non-reviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing.  See 2022 WL 4365746, at *3–4 ("As [Plaintiff's] case remains in administrative processing and has not been finally refused, the

4

doctrine of consular non-reviewability is inapplicable to this claim, as Plaintiff does not seek review of any decision but instead of the Government's failure to decide.") (cleaned up).

Before turning to the merits of Plaintiff's suit, the Court addresses a new jurisdictional position that Defendants stake out here — namely, that Plaintiff lacks standing.

A.   Standing

"The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  The Government challenges Khan's standing on both grounds.

To meet the constitutional requirements for standing under Article III, Plaintiff must show "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" Ark Initiative v. Tidwell, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  According to Defendants, Khan lacks constitutional standing because his suit is based on a "procedural injury" that is not "tethered to some concrete interest adversely affected by the procedural deprivation[.]"  MTD at 5 (quoting Aminjavaheri v. Biden, No. 21-2246, 2021 WL 4399690, at *6 (D.D.C. Sept. 27, 2021)).  Such concrete interests include those "recognized at common law or specifically recognized . . . by Congress." Sargeant v. Dixon, 130 F.3d 1067, 1069 (D.C. Cir. 1997); cf. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) ("[P]laintiff's injury in fact [must] be concrete—that is, real, and not abstract.") (internal citations and quotations omitted).

The problem with this argument is that Congress specifically recognized the right to reasonably expeditious agency action when it passed the APA, a procedural right that here is tethered to Plaintiff's concrete financial and other interests in attending his residency program or pursuing other options.  See id. ("[C]ertain harms readily qualify as concrete injuries under Article III[,]" including "monetary harms.")  Courts in this district have accordingly held that those seeking to challenge unreasonable delay in their visa applications possess constitutional standing because they "have suffered an injury in fact: the failure to receive final decisions on their . . . applications within a reasonable period[,]" a failure here that has led to significant financial and other hardship for Plaintiff.  Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 282 (D.D.C. 2016); see also Rai v. Biden, 567 F. Supp. 3d 180, 190 (D.D.C. 2021); Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo, No. 18-1388, 2019 WL 367841, at *8 (D.D.C. Jan. 30, 2019); Al-Gharawy v. U.S. Dep't of Homeland Sec., No. 21-1521, 2022 WL 2966333, at *5 (D.D.C. July 27, 2022).

That same reasoning forecloses Defendants' next contention that prudential considerations counsel against standing.  The upshot of Defendants' position — which is based on a recycled version of their consular non-reviewability arguments — is that there is no recourse, judicial or otherwise, for visa applicants experiencing unlawful delays.  In other words, Defendants urge the Court to find that prudence trumps the text of the APA.  Yet, as the Supreme Court has explained, a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 (2014).  This newfound attempt to avoid judicial review of undue-delay claims on their merits thus meets the same fate as Defendants' consular non-reviewability argument.

B.   Unreasonable Delay

The thrust of Plaintiff's claim here is that Defendants have unreasonably delayed the adjudication of his application for a J-1 visa because they have been sitting on it for seven months.  He contends that such delay violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and which directs courts to "compel agency action . . . unreasonably delayed." Id. § 706(1).  Defendants rejoin that any delay in processing Khan's application is not yet unreasonable.  The Court agrees.

To evaluate the reasonableness of agency delay, the Court examines six factors set out in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (internal quotations and citations omitted); see also Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  These six factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80).  "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." Air Line Pilots Ass'n, Int'l v.

Civ. Aeronautics Bd., 750 F.2d 81, 86 (D.C. Cir. 1984). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee, 336 F.3d at 1102.

It is appropriate to resolve this issue at the motion-to-dismiss stage because "this record contains enough facts to evaluate the TRAC factors now." Sarlak v. Pompeo, No. 20-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (collecting cases and evaluating TRAC factors on motion to dismiss); see also Dastagir v. Blinken, 557 F. Supp. 3d 160, 169 (D.D.C. 2021); Zandieh v. Pompeo, No. 20-919, 2020 WL 4346915, at *8 (D.D.C. July 29, 2020).

The considerations contemplated by the TRAC factors can be grouped into four basic inquiries here. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for [an agency]'s delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)? [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?" Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

The only salient factual difference between this case and Sawahreh is that even less time has passed without a decision here. See 2022 WL 4365746, at *2 (decision delayed by fifteen months, as opposed to seven here). The Court will thus rely on its reasoning in Sawahreh in assessing the TRAC factors. As the Court explained in that case, the first two factors favor Defendants because "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not

unreasonable." Id. at *5 (quoting Sarlak, 2020 WL 3082018, at *6 (citation omitted) (collecting cases)).  By contrast, factors three and five favor Plaintiff because of the financial and professional harm that this delay inflicts upon him.  The fourth factor carries the most weight here, as it does in most cases, and favors Defendants.  See Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020).  "Plaintiff's application is delayed because of 'resource-allocation decisions' that 'do not lend themselves to judicial reordering[s] [of] agency priorities.'" Sawahreh, 2022 WL 4365746, at *6 (quoting Milligan, 502 F. Supp. 3d at 319).  Finally, as Khan does not allege that this delay is intentional or due to any impropriety, see generally Compl., "the good faith of the agency in addressing the delay weighs against equitable relief." Milligan, 502 F. Supp. 3d at 319 (internal quotations omitted).  As a result, just as in Sawahreh, "[t]he balance of these factors currently tilts against the Court's intervention in this case."  2022 WL 4365746, at *7.

The Court nonetheless "recognizes that the delay is substantial and imposes hardship on Plaintiff[], and it encourages the Government to act on the application as soon as possible." Didban, 435 F. Supp. 3d at 177.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 29, 2022